UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:14-cr-257

        Plaintiff

    v.  MEMORANDUM OPINION

Larry Darnell Frazier,

        Defendant

This matter is before me to determine the loss amount attributable to Defendant Larry Frazier. The parties briefed the matter (Doc. Nos. 34, 35, & 42), and I held an evidentiary hearing on the issue of loss on November 4, 2015. For the reasons stated below, I find the loss amount to be $51,895.67.

## BACKGROUND

On August 6, 2014, Frazier was indicted on forty-five counts of wire fraud and one count of transporting in interstate commerce property taken by fraud. (Doc. No. 1). On March 20, 2015, Frazier entered into a plea agreement, in which he pled guilty to sixteen counts of wire fraud. (Doc. No. 25 at 3).

Frazier admitted to purchasing from various Lowe's stores large, boxed items in which he had concealed smaller items. (Doc. No. 25 at 8). Frazier would then return the items he had paid for, as well as those he had not, and receive store credit placed on a gift card. (Doc. No. 25 at 8-9). Frazier stipulated to using five aliases and completing sixteen fraudulent transactions in Ohio. (Doc. No. 25 at 9-15).

## STANDARD

"In determining loss under U.S.S.G. § 2B1.1, the court must use the greater of actual or intended loss." *United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013) (citing U.S.S.G. § 2B1.1 cmt. n.3(A)). The Guidelines define actual loss as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). Intended loss is "the pecuniary harm that the defendant purposely sought to inflict; and . . . includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." *Id.* § 2B1.1 cmt. n.3(A)(ii). In calculating this amount, I "need only make a reasonable estimate" of the loss. *United States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011) (citing U.S.S.G. § 2B1.1 cmt. n.3(C)) (internal quotation marks omitted). The government must prove the amount of loss by a preponderance of the evidence. *Id.*

## DISCUSSION

The government asserts that a reasonable estimate of the actual loss attributable to Frazier is $161,067.02. (Doc. No. 34 at 14). The government bases its calculation on a list of 359 transactions it believes Frazier completed at Lowe's stores spread across Ohio, Michigan, Indiana, Pennsylvania, Illinois, Georgia, Tennessee, Alabama, Florida, Maryland, Delaware, Virginia, New Jersey, and Kentucky. (Doc. Nos. 34-2 & 34 at 14-15).

The Lowe's loss prevention department compiled this list of transactions. (Doc. No. 39 at 22-23). In an attempt to identify all the transactions potentially linked to this scheme, Lowe's began by using a zip-code search to identify different names, ID numbers, and addresses Frazier might have used to complete fraudulent returns. (Doc. No. 39 at 31). Lowe's, however, was unable to determine if any of the names and corresponding ID numbers generated by the search were legitimate, because it could not access the necessary systems. (Doc. No. 39 at 34).

Lowe's took its findings to the United States Secret Service in Toledo, Ohio, whose agents worked with Lowe's to continue the investigation, resulting in a list of 366 transactions. (Doc. No. 39 at 39). These transactions include the sixteen to which Frazier has stipulated. (Doc. No. 34-2).

2

The government has voluntarily excluded seven transactions from the list. (Doc. No. 34 at 12). Of those seven, one transaction was a duplicate, and upon closer inspection, the other six transactions listed under Shaun Griffin and John Thorton appear unlikely to be part of Frazier's scheme. (Doc. No. 34 at 12). The remaining 343 transactions were completed by men using the five aliases Frazier stipulated to having used, as well as twenty-four other names. (Doc. Nos. 34-2 & 34 at 5). The government has receipt or video and receipt evidence for only 101 of these transactions. (Doc. No. 34-2).

Frazier asserts that the reasonable estimate of actual loss attributable to him is $48,383.24. (Doc. No. 42 at 5). Frazier asks that I exclude all transactions for which the government has neither video nor receipt evidence proving he completed the transaction and all transactions completed under the names Darnell Frazier, Gregory Frazier, Jessie Gosha, and Wesley Gosha. (Doc. No. 42 at 1).

Darnell Frazier, Gregory Frazier, and Jessie Gosha are real people, not just aliases. (Doc. No. 42-1). Both their names and ID numbers were verified by an investigator. (Doc. No. 42-1). In fact, Jessie Gosha was identified as being present in a Lowe's store with Frazier on one occasion. (Doc. No. 39 at 25-26). On that occasion, Frazier completed a legitimate return. (Doc. No. 39 at 28-30). But because the two men were together in the store, and because both were suspected of carrying out similar schemes, the transactions bearing Jessie Gosha's name were included in the government's total. (Doc. No. 39 at 26 & 28). As for the Wesley Gosha transactions, Frazier claims the signatures on those receipts do not match his known signatures. (Doc. No. 42 at 4; Deft's Exh. B at the hearing[1]).

---

[1] At the hearing, defense counsel presented to the Court two exhibits, labeled "B" and "C." The exhibit labeled "B" was a photocopy of two known signatures belonging to Frazier. The exhibit labeled "C" was a copy of receipts signed by Wesley Gosha or by someone purporting to be Wesley Gosha. Despite their labels, defense counsel referred to these exhibits collectively as Exhibit B. (Doc. Nos. 39 at 13 & 42 at 1). Subsequent to the hearing, defense counsel submitted Tonya L. Carr's Affidavit as Exhibit C. (Doc. No. 42 at 3). Because counsel sufficiently identified the

Frazier also asks that I credit him $4,750 for items he legitimately paid for to effectuate his scheme. (Doc. No. 42 at 5). Because it is impossible to tell from the receipts which items Frazier purchased (Doc. No. 39 at 68-70 & 75-76), Frazier asks me to credit him $50 for every transaction I attribute to him (Doc. No. 16). Frazier derived this number from available information and discussion with the government, but it is an unscientific average. (Doc. No. 39 at 15-16).

I find neither side advances a proper loss amount.

While the government provided a comprehensive list of transactions it believes Frazier completed, there is only receipt or video evidence for 101 of these transactions. For the remainder, the government points to the similarity in nature between these transactions and the scheme Frazier has admitted running.

This approach, however, poses a problem. The search means used to uncover Frazier's fraudulent activity identified several transactions for which Frazier is responsible. But the search cast too wide a net, resulting in the inclusion of transactions completed by at least three people whose identities and ID numbers have been verified. One of those three, Jessie Gosha, is known to the government and suspected of being "Frazier's part-time confederate." (Doc. No. 34 at 13). And though Frazier was not charged with conspiracy, Jessie Gosha's transactions were still included in the government's total. There were also transactions linked to two people identified through the search which the government has since voluntarily excluded as not likely part of the scheme. Finally, the receipts produced for the transactions listed under the name Wesley Gosha bear signatures that clearly do not match Frazier's known signatures.

This leaves me with a troubling search and a lack of evidence supporting the inclusion of all 359 transactions in the loss amount. So, though I am suspicious of the remaining transactions for which there is no evidence of Frazier's involvement, I cannot find him responsible in the absence of more connecting them to him than consistent or similar behavior.

---

evidence she verbally offered as Exhibit B, despite the differing labels, I admit into evidence and consider all exhibits offered by defense counsel.

Similarly, I deny Frazier's request for a credit of $50 per transaction assessed against him. Frazier's scheme necessitated purchasing a large item in which he could hide smaller items, but it is impossible to tell from the available evidence what items were purchased. It is also unknown whether those items were purchased with Frazier's personal funds or if they were purchased with gift cards issued for fraudulent returns. (Doc. No. 39 at 76). Without more, I cannot calculate an appropriate amount to credit Frazier.

Instead, I find Frazier responsible for the transactions for which the government has receipt or video and receipt evidence, excepting any of those transactions completed using the names Darnell Frazier, Gregory Frazier, Jessie Gosha, and Wesley Gosha. I am comfortable that these transactions safely satisfy the preponderance standard.

## CONCLUSION

Accordingly, I find Frazier's fraudulent activity resulted in an actual loss of $51,895.67.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge